UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMANDO PADILLA,<br><br>                Plaintiff,<br><br>     v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>                Defendant. | Case No. CV 09-8579-JEM<br><br>MEMORANDUM OPINION AND ORDER REVERSING DECISION OF COMMISSIONER AND REMANDING FOR FURTHER PROCEEDINGS |

**PROCEEDINGS**

On November 20, 2009, Armando Padilla ("Plaintiff" or "Claimant") filed a Complaint seeking review of the decision by the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for Disability Insurance Benefits under Title II of the Social Security Act. On May 27, 2010, the Commissioner filed an Answer to the Complaint. On July 30, 2010, the parties filed a Joint Stipulation ("JS") setting forth their positions and the issues in dispute.

Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before the undersigned Magistrate Judge. The matter is now ready for decision. After reviewing the pleadings, transcripts, and administrative record ("AR"), the Court concludes that the

Commissioner's decision should be reversed and remanded for further proceedings in accordance with law and with this Memorandum Opinion and Order.

## BACKGROUND

Plaintiff was born on June 9, 1962, and was 39 years old on his alleged disability onset date of June 26, 2001. (AR 74.) Plaintiff filed an application for Disability Insurance Benefits on October 27, 2006. (AR 13, 74-78.) Plaintiff claims he is disabled due to back problems and depression. (AR 87.) Plaintiff has not engaged in substantial gainful activity since June 26, 2001. (AR 15, 87-88.)

Plaintiff's claim was denied initially on March 13, 2007 (AR 60-65), and on reconsideration on July 20, 2007. (AR 67-72.) Plaintiff filed a timely request for hearing on August 13, 2007. (AR 73.) Plaintiff appeared with counsel and testified at a hearing held on June 11, 2008, before Administrative Law Judge ("ALJ") Robert A. Evans. (AR 42-54.) The ALJ issued a decision denying benefits on August 12, 2008. (AR 13-22.) On September 9, 2008, Plaintiff filed a timely request for review of the ALJ's decision. (AR 7.) The Appeals Council denied review on September 20, 2009. (AR 1-3.) Plaintiff then commenced the present action.

## DISPUTED ISSUES

As reflected in the Joint Stipulation, there are two disputed issues:

1. Whether the ALJ's residual functional capacity assessment is supported by substantial evidence; and

2. Whether the ALJ properly evaluated Plaintiff's subjective symptom testimony. (JS at 3.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "'more than a mere scintilla,' but less than a preponderance."

Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (internal quotation marks and citation omitted). This Court must review the record as a whole and consider adverse as well as supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Morgan v. Comm'r, 169 F.3d 595, 599 (9th Cir. 1999). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins, 466 F.3d at 882 (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)); see also Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

## DISCUSSION

The Court reverses the ALJ's decision and remands for further proceedings. The ALJ did not properly evaluate the medical evidence in determining Plaintiff's residual functional capacity or provide legally sufficient reasons for discounting Plaintiff's credibility.

### A. The Sequential Evaluation

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d) (1)(A), 1382c(a)(3)(A). The Commissioner has established a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantial gainful activity. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). If the claimant is engaging in substantial gainful activity, disability benefits will be denied. Bowen v. Yuckert, 482 U.S. 137, 140, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). Second, the ALJ must

determine whether the claimant has a severe impairment or combination of impairments. Parra, 481 F.3d at 746. Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in Appendix I of the regulations. Id. If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled. Bowen, 482 U.S. at 141. Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work. Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001). Before making the step four determination, the ALJ first must determine the claimant's residual functional capacity ("RFC").[1] 20 C.F.R. § 416.920(e). The RFC must account for all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p. If the claimant cannot perform his or her past relevant work or has no past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantial gainful activity. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

      The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times the burden is on the claimant to establish his or her entitlement to benefits. Parra, 481 F.3d at 746. Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity. Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006). To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can do, given his or her RFC, age, education, and work experience. 20 C.F.R. § 416.912(g). If the Commissioner cannot meet this burden, then the claimant is disabled and entitled to benefits. Id.

---

[1] Residual functional capacity ("RFC") is what one "can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

4

**B.    The ALJ Did Not Properly Evaluate Dr. Siebold's Opinion.**

In arguing that the ALJ's RFC determination was not supported by substantial evidence, Plaintiff contends primarily that the ALJ did not properly evaluate the opinion of an examining physician, Dr. R. M. Siebold.  (JS at 3-4, 8-9.)  The Court agrees.

**1.    Relevant Law**

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians:  (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining, or consulting, physicians).  See 20 C.F.R. §§ 404.1527, 416.927; see also Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). In general, an ALJ must accord special weight to a treating physician's opinion because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual."  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted).  If a treating source's opinion on the issues of the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the case record, the ALJ must give it "controlling weight."  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

Where a treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons.  Lester, 81 F.3d at 830.  However, if the treating physician's opinion is contradicted by another doctor, such as an examining physician, the ALJ may reject the treating physician's opinion by providing specific, legitimate reasons, supported by substantial evidence in the record.  Lester, 81 F.3d at 830-31; see also Orn, 495 F.3d at 632; Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).  Where a treating physician's opinion is contradicted by an examining professional's opinion, the Commissioner may resolve the conflict by relying on the examining physician's opinion if the examining physician's opinion is supported by different, independent clinical findings.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995); Orn, 495 F.3d at 632.  Similarly, to

reject an uncontradicted opinion of an examining physician, an ALJ must provide clear and convincing reasons. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005). If an examining physician's opinion is contradicted by another physician's opinion, an ALJ must provide specific and legitimate reasons to reject it. Id. However, "[t]he opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician"; such an opinion may serve as substantial evidence only when it is consistent with and supported by other independent evidence in the record. Lester, 81 F.3d at 830-31; Morgan, 169 F.3d at 600.

### 2. Analysis

Plaintiff has had considerable difficulties with his back since suffering a workplace injury on February 21, 2001. (AR 180). In the months following the injury, Plaintiff received multiple diagnoses, including lumbosacral strain with L4-5 disc protrusion, lumbar degenerative disc disease, lumbar disc herniation, herniated nucleus pulposus, encroachment of the medial aspect of the right neural foramina, and slight central bulges at L3-4 and L4-S1. (AR 142, 183). In August 2001, Plaintiff underwent his first back surgery, a lumbar laminectomy. (AR 166, 183.) The surgery afforded Plaintiff "two months of pain relief," but he then complained of "persistent stabbing low back pain radiating down his right leg." (AR 161, 184.) Diagnostic imaging revealed that Plaintiff had spondylolisthesis at L4-5 and sacralization at L5. (AR 161.)

On January 9, 2003, Plaintiff underwent his second surgical procedure: an L5-S1 decompression and radical diskectomy, excision of scar tissue, intervertebral application of a biomechanical device, and posterior lumbar interbody fusion with autograft from the iliac crest bone. (AR 161.) After this surgery, Plaintiff experienced "postoperative pain and new left lower extremity radicular pain" that was described as "out of control." (AR 174.) In light of his "significant pain and decrease in functional mobility and impaired activities of daily living," Plaintiff was admitted for two weeks of inpatient rehabilitation with physical therapy,

occupational therapy, and pain control. (AR 159-61.) He was discharged "to home on home health followup for [physical therapy] and nursing." (AR 159.)

Plaintiff continued to experience significant pain thereafter. (AR 185, 242-58.) In June 2004 he was diagnosed with "spinal stenosis and bilateral radiculopathy related to progression of the pathology at L4-5, [one] level above the previously fused and instrumented area." (AR 152.) On June 3, 2004, he was admitted to the hospital for his third spinal surgery: reexploration of the lumbar laminectomy fusion and instrumentation site and attempt at decompression of L4-5, and addition of interbody as well as posterolateral fusion at L4-5. (AR 151-53.) Upon discharge, home health care for physical therapy was recommended. (AR 157.)

In addition to his surgeries, Plaintiff has received treatments such as epidural injections and prescription pain medications, and Plaintiff has continued to experience back pain since his surgeries. (AR 138, 145, 231-38, 229, 291.) In December 2004, an Agreed Medical Examiner ("AME"), Dr. R. M. Siebold, reported that Plaintiff "remains chronically symptomatic." (AR 188.) In March 2006, A Qualified Medical Evaluator in Plaintiff's workers' compensation case summarized, "Despite having undergone three major lumbar spine surgeries, [Plaintiff] continues to experience persistent pain of the low back that radiates to both legs, the left being far more severe than the right. In addition to losing his capacity to engage in the only type of work he has ever known (or feels qualified for), [Plaintiff] reports that he has lost the capacity to engage in virtually all of his usual recreational activities, including playing sports with his nine-year-old son." (AR 181.) At the hearing before the ALJ, Plaintiff testified that he can walk for only about ten minutes, stand for fifteen minutes, and sit for thirty to forty-five minutes at one time, and that his back pain interferes with his ability to take care of his personal hygiene, such as cleaning his feet and putting on socks. (AR 49-51.)

The ALJ found that Plaintiff retained the RFC "to lift and carry 10 pounds occasionally and 10 pounds frequently, stand/walk at least 2 hours in an 8-hour workday, sit 6 hours in an

8-hour workday, limited push/pull with the lower extremities, and occasional climbing, balancing, stooping, kneeling, crouching and crawling." (AR 15.) In contrast, AME Dr. Siebold opined that Plaintiff was restricted to "light work only with the ability to sit or stand at will with intermittent use of a cane and use of an occasional back brace."[2] (AR 188.) The ALJ did not mention Dr. Siebold's opinion. (AR 16-20.) Therefore, the ALJ implicitly rejected Dr. Siebold's opinion because it conflicts with his RFC assessment.

The ALJ's failure to provide specific and legitimate reasons for rejecting the opinion of Dr. Siebold constitutes legal error. See Bayliss, 427 F.3d at 1216. The Court cannot conclude the ALJ's error was harmless. At step five of the sequential evaluation, the ALJ adopted the vocational expert's testimony that Plaintiff could perform the occupations of packager and assembler. (AR 21-22, 53-54.) In response to Plaintiff's attorney's questioning, the vocational expert testified that neither of those occupations would "afford a sit/stand option." (AR 54.) Therefore, Dr. Siebold's opinion that Plaintiff requires the option to sit or stand at will is not "inconsequential to the ultimate nondisability determination," and the ALJ's failure to provide legally sufficient reasons to reject it was not harmless error. See Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006). Remand is warranted for the ALJ to reevaluate Dr. Siebold's opinion and reassess Plaintiff's RFC.[3]

---

[2]The Court notes that the record does not contain a copy of any of Dr. Siebold's reports. Instead, Dr. Siebold's opinion was discussed in the "Comprehensive QME Psychological Evaluation" of Dr. John Tholen. (AR 187-89.) On remand, the ALJ should obtain Dr. Siebold's reports, if possible, to inform his analysis.

[3]Plaintiff also contends that the ALJ's RFC determination was flawed because the ALJ "failed to call a medical advisor to help determine whether [Plaintiff's impairments] satisfy the requirements of Listing 1.04(A)." (JS at 4.) The Court disagrees. Plaintiff cites no legal authority in support of this argument, and the factual analysis amounts to speculation. (See JS 4, 8-9.) Under these circumstances, the ALJ was not required to call a medical advisor to evaluate whether Plaintiff's impairments meet or equal a listed impairment. See Lewis v. Apfel, 236 F.3d 503, 514-15 (9th Cir. 2001) (ALJ did not err in failing to compare claimant's impairment to listing where claimant did not offer a plausible theory that his impairment equaled a listing).

**C.     The ALJ Did Not Properly Evaluate Plaintiff's Credibility.**

Plaintiff argues that the ALJ did not provide legally sound reasons for discounting his credibility.  (JS at 9, 13.)  The Court agrees.

### 1.     Pertinent Law

The test for deciding whether to accept a claimant's subjective symptom testimony turns on whether the claimant produces medical evidence of an impairment that reasonably could be expected to produce the pain or other symptoms alleged.  Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991); see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Smolen, 80 F.3d at 1281-82 & n.2.  The Commissioner may not discredit a claimant's testimony on the severity of symptoms merely because they are unsupported by objective medical evidence.  Reddick, 157 F.3d at 722; Bunnell, 947 F.2d at 343, 345.  If the ALJ finds the claimant's symptom testimony not credible, the ALJ "must specifically make findings which support this conclusion."  Bunnell, 947 F.2d at 345.  These findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony."  Thomas, 278 F.3d at 958; see also Rollins v. Massanari, 261 F.3d 853, 856-57 (9th Cir. 2001); Bunnell, 947 F.2d at 345-46.  Unless there is evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering "specific, clear and convincing reasons for doing so."  Smolen, 80 F.3d at 1283-84; see also Reddick, 157 F.3d at 722.  The ALJ must identify what testimony is not credible and what evidence discredits the testimony.  Reddick, 157 F.3d at 722; Smolen, 80 F.3d at 1284.

### 2.     Analysis

In this case, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [RFC] assessment."  (AR 20.)  Although the ALJ

offered several reasons for discounting Plaintiff's credibility, the Court finds that this determination is not supported by substantial evidence.

Initially, the Court notes that the ALJ did not identify specifically what testimony he found incredible and what evidence discredited that testimony. (See AR 20.) This was error. See Reddick, 157 F.3d at 722 ("General findings are not sufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.") (internal quotation marks and citation omitted). The Court will nonetheless review the reasons the ALJ provided for discounting Plaintiff's credibility.

First, the ALJ alleged that Plaintiff's "subjective complaints and alleged limitations are out of proportion to the objective findings." (AR 20.) An ALJ may consider lack of objective medical evidence supporting the degree of limitations, but this factor "cannot form the sole basis for discounting" subjective symptom testimony. Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005). As discussed below, the ALJ provided no other valid reason for discounting Plaintiff's testimony. Thus, to the extent the ALJ correctly concluded that there was a lack of objective medical evidence to substantiate Plaintiff's claims, this reason does not alone suffice to discount his credibility.

Next, the ALJ found that Plaintiff's "subjective complaints and alleged limitations are not consistent with his treatment." (AR 20.) As discussed above, Plaintiff has had multiple surgeries for his back problems and received an array of other testing and treatment. The ALJ did not mention what other treatment he would have expected a person with Plaintiff's complaints to undergo. The ALJ did state that Plaintiff "uses a cane, but there is no evidence that he was prescribed a cane or assistive device for ambulation by a doctor." (AR 20.) But Plaintiff wrote that his cane was prescribed by a doctor (AR 101), and there is evidence in the record that physicians believed Plaintiff benefitted from, and may have even relied upon, a cane for effective ambulation. For example, Dr. Siebold stated that Plaintiff was restricted to "light work only with the ability to sit or stand at will with intermittent use of a cane," and treating physician Dr. Gurskis wrote that Plaintiff's "[g]ait is antalgic" and he "uses a walking cane for ambulating." (AR 188, 257.) The ALJ also noted that Plaintiff "has not received

mental health treatment and does not take psychiatric medication." (AR 20.) But there is evidence that Plaintiff has taken Elavil, an anti-depressant, from 2003 through at least April 2007. (See, e.g., AR 192, 227, 229, 290.) In any event, the extent of Plaintiff's psychiatric treatment does not have any bearing on the credibility of his testimony about the effects of his main impairment, his back pain. The Court finds that the ALJ's characterization of Plaintiff's treatment as conservative is not supported by substantial evidence and does not clearly and convincingly undermine Plaintiff's credibility.

Finally, the ALJ noted that at an examination by Qualified Medical Evaluator Dr. John Tholen, Plaintiff "showed a broad tendency to magnify his psychiatric complaints in responding to psychological test items." (AR 20.) The ALJ is correct that Dr. Tholen characterized Plaintiff's test responses as "significantly elevated," "exaggerated," and possibly "report[ing] more emotional symptoms than objectively exist." (AR 195, 196, 197.) However, the ALJ fails to mention that Dr. Tholen viewed these responses as "most likely" a "plea for help," and went on to diagnosis Plaintiff with moderately severe Major Depressive Disorder. (AR 196, 199.) Dr. Tholen elaborated that "[i]t is understandable and consistent with accepted principles of psychological etiology that the emotional stress created by [Plaintiff's] industrial lumbar spine injury has been the predominant cause of a compensable consequence psychiatric injury" and that Plaintiff's "Major Depressive Disorder overlies prominent longstanding (and predisposing) characterologic tendencies to be psychologically unsophisticated, emotionally sensitive, socially introverted, negativistic, and passive-dependent." (AR 200.) Dr. Tholen also reported that Plaintiff exhibited a "depressed mood, blunted affect, anhedonia, irritability, dysphoria, tension, poor eye contact, and impaired concentration and attentional processes." (AR 201.) In the context of Dr. Tholen's entire report, Plaintiff's exaggerated responses to psychological testing do not clearly and convincingly undermine his credibility.

Remand is warranted for the ALJ to reassess Plaintiff's credibility.

**ORDER**

IT IS HEREBY ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding for further proceedings in accordance with law and with this Memorandum Opinion and Order.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: January 10, 2011                    */s/ John E. McDermott*
                                            JOHN E. MCDERMOTT
                                            UNITED STATES MAGISTRATE JUDGE